IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01104-GPG-KAS

RODNEY DOUGLAS EAVES,

    Plaintiff,

v.

DAWN SKRAMSTED,
MARSHALL GRIFFITH,
VANESSA CARSON,
LAURA GRIBBLE,
TABATHA MARIE KRICK,
MICHELLE BRODEUR,
HOLLY WINTERS, and
JANE DOES 1-3,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on the CDOC Defendants'[1] **Motion to Dismiss Plaintiff's Third Amended Complaint** [#29] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#30][3] in opposition to the Motion [#29], and the CDOC

---

[1] The CDOC Defendants are Defendants Michelle Brodeur, Holly Winters, and Marshall Griffith. *See Motion* [#29] at 1.

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] "[#30]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Defendants filed a Reply [#31]. The Motion [#29] has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#35]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#29] be **GRANTED.**

## I. Background[4]

Plaintiff is a convicted and sentenced state prisoner in the custody of the Colorado Department of Corrections ("CDOC"). *See Third Am. Compl.* [#11] at 2. At all times relevant to this case, he was housed at the Bent County Correctional Facility ("BCCF"), a private prison operated by CoreCivic under a state contract. *See id.* Defendant Brodeur is the CDOC Director of Clinical and Correctional Services, Defendant Winters is the CDOC Assistant Director of Clinical and Correctional Services, and Defendant Griffith is a CDOC grievance officer. *Id.* at 7, 9.

Plaintiff alleges that he began suffering severe joint pain in or around December 2022 and severe tooth pain in or around April 2023, but that prison officials failed to properly and promptly respond to his kites and grievances about these medical needs. *See, e.g., id.* at 10, 14-15.[5]

---

[4] For the purposes of resolving the Motion [#29], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#11]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Moya v. Schollenbarger*, 465 F.3d 444, 445 (10th Cir. 2006)). Here, Plaintiff also submitted a "Memorandum in Support of Amended Complaint" [#11-1], which is essentially a preemptive brief opposing dismissal. The Court has reviewed Plaintiff's Memorandum [#11-1], but it does not change the Court's analysis or conclusions.

[5] Plaintiff has also brought claims against Defendants Jane Does ##1-3, Skramsted, Vanessa Carson, Laura Gribble, and Tabatha Marie Krick, who are alleged to have greater involvement with the provision of care. However, because those Defendants have not moved to dismiss, in this Recommendation, the Court only addresses those claims to the extent they provide necessary context for the claims against the CDOC Defendants.

As for Defendant Griffith, Plaintiff alleges that he failed to follow CDOC policies, including Administrative Regulation ("AR") 850-04(IV)(E)(1), which requires the grievance officer "[to] sufficiently investigate the circumstances surrounding the problem or complaint"; and AR 850-04(IV)(E)(2)(d), which requires him to forward "[c]omplaints regarding medical care . . . to the Clinical Services grievance coordinator[.]" *Id.* ¶¶ 39-40, 92-93 (invoking the same ARs). He also alleges that Defendant Griffith "refused to [e]nsure that staff are properly trained and understand their duties under AR 100-01 and AR 100-19." *Id.*, ¶ 38. Plaintiff alleges that "[Defendant] Griffith violated [his] substantive due process rights pursuant to the Fourteenth Amendment. He was to insure [*sic*] policy was followed so [Plaintiff] would not be subjected to these situations in violation of the Eighth Amendment deliberate indifference to [his] medical needs." *Id.* ¶¶ 42, 95.

As for Defendants Brodeur and Winters, Plaintiff alleges that they "failed their duties as demonstrated by the pattern of the deliberate indifference to [his] medical needs and the substantive due process to insure [*sic*] [he] would receive proper medical care." *Id.* ¶ 99. He alleges that "[i]t was [their] responsibility and duty to ensure [he] would receive proper medical care pursuant to CDOC policy[,]" and that under AR 700-10(IV)(A)(4)(a)/(c) they were required to "systematic[ally] investigat[e] complaints and grievances." *Id.* ¶¶ 100, 106. Finally, Plaintiff alleges that Defendants Brodeur's and Winters' failure to follow CDOC policy resulted in a "pattern of deliberate indifference to [Plaintiff's] medical needs in violation of the Eighth Amendment and [his] substantive due process liberty interests, pursuant to the Fourteenth Amendment[.]" *Id.* ¶ 107.

Plaintiff brings three claims, each under the Eighth and Fourteenth Amendments: (1) deliberate indifference to his serious medical needs for his joint pain, (2) deliberate

3

indifference to his serious medical needs for his dental problems, and (3) a pattern of deliberate indifference to his serious medical needs. *Id.* at 4, 14, 16. Claims One and Two are brought against Defendant Griffith as well as other defendants, while Claim Three is brought against Defendants Brodeur and Winters only. *Id.* Additionally, under a liberal construction of the allegations, Plaintiff appears to assert a Fourteenth Amendment procedural due process claim based on Defendant Griffith's alleged failures to ensure that responding staff comply with Administrative Regulations governing grievances and to ensure that staff are properly trained on the grievance procedure and understand his duties. *See id*. ¶¶ 39, 40, 42 (referencing "substantive due process rights" while also complaining about failures "to [e]nsure [grievance] policy was followed"), 92, 93, 95 (also complaining about failures to ensure grievance policy was followed).

The CDOC Defendants move to dismiss, arguing that (1) the Eleventh Amendment bars any monetary damages against them in their official capacity;[6] (2) Plaintiff fails to state a Fourteenth Amendment due process claim because the more specific Eighth Amendment covers his claims; and (3) Plaintiff fails to adequately allege that any of the CDOC Defendants personally participated in any alleged constitutional violation, entitling them to qualified immunity. *See Motion* [#29] at 6-13.

## II. Legal Standard

### A.    Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the

---

[6] As Plaintiff notes in his Response [#30], the Third Amended Complaint [#11] only seeks monetary damages against the CDOC Defendants in their individual capacities. *Response* [#30] at 1 (citing *Third Am. Compl.* [#11] at 20-21).

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim for relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,] . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

**B.    Qualified Immunity**

The doctrine of qualified immunity shields government officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982).

"When a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that [the defendant is] immune from suit.'" *Est. of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)) (modification in original). To overcome an assertion of qualified immunity, the plaintiff must show that "(1) the [defendants'] alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that 'every reasonable official would have understood,' that such conduct constituted a violation of that right." *Perea*, 817 F.3d at 1202 (quoting *Mullenix*, 577 U.S. at 12). The Court may examine the two prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When determining whether a constitutional violation occurred, the Court must look at whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (holding that, to plead a plausible claim in a case subject to qualified immunity, a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time"). If a plaintiff fails to establish a constitutional violation, no further analysis is necessary and qualified immunity is appropriate. *See Pearson*, 555 U.S. at 236

### III. Analysis

The Court construes Plaintiff's Fourteenth Amendment claims against the CDOC Defendants as including a procedural due process claim for alleged failure to follow policy or grievance protocols as well as a substantive due process claim for deliberate

indifference. The Court therefore separates its Fourteenth Amendment analysis into two parts.

### A.  Fourteenth Amendment Procedural Due Process

The Court construes Plaintiff's Complaint as alleging that Defendant Griffith violated his Fourteenth Amendment right to procedural due process through a failure to investigate grievances, comply with the grievance procedure, and properly train staff regarding the grievance procedure. *See Third Am. Compl.* [#11] ¶¶ 39, 40, 42, 92, 93, 95.

"The first step in assessing a claimed procedural due process violation is to identify a constitutionally protected liberty or property interest. A liberty interest can either inhere in the Due Process clause or it may be created by state law." *Conley v. McKune*, 529 F. App'x 914, 922 (10th Cir. 2013) (quoting *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012)). At the outset, the Court notes that prisoners lack a liberty interest in grievance procedures, and therefore any claim that a prison's grievance procedures violate procedural due process rights fails. *See Rudnick v. Raemisch*, 774 F. App'x 446, 449 (10th Cir. 2019); *see also Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (noting that a "state's voluntary provision of an administrative grievance process [does not] create a liberty interest in that process"). In addition, "[w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access of the courts, which is not compromised by the prison's refusal to entertain his grievance." *Boyd*, 443 F. App'x at 332 (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam)).

Because there is no liberty interest in prison grievance procedures and the failure to entertain a grievance does not compromise the right to access of the courts, Plaintiff

7

fails to allege a procedural due process violation by the CDOC Defendants. Accordingly, the Court **recommends** that Plaintiff's Fourteenth Amendment procedural due process claim, to the extent one is asserted, against Defendant Griffith be **dismissed.**

**B.    Fourteenth Amendment Deliberate Indifference**

To the extent that Plaintiff alleges Fourteenth Amendment deliberate-indifference claims, the CDOC Defendants correctly argue that these claims should be dismissed because the more specific Eighth Amendment, not the more general Fourteenth Amendment, protects the medical needs of convicted inmates. *Motion* [#29] at 7.; *cf. Graham v. Connor*, 490 U.S. 386, 395 (1989) (reasoning in the context of an excessive force claim against law enforcement that the more specific Fourth Amendment "provides an explicit textual source of constitutional protection . . ., not the more generalized notion of 'substantive due process,'" under the Fourteenth Amendment); *see Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (stating, "where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process."); *Coffey v. United States*, Nos. CIV 08-0588 JB/LFG, CIV 09-0028 JB/LFG, 2011 WL 6013611, at *20 (D.N.M. Nov. 28, 2011) (holding that the plaintiff "may not proceed on a substantive due-process theory" in her deliberate indifference lawsuit against jail medical staff because "a specific constitutional amendment, the Eighth Amendment, applies to her claim."); *Tivis v. Beecroft*, No. 06-cv-02025, 2007 WL 2786434, at *5 (D. Colo. Sept. 24, 2007) (adopting recommendation which reviewed convicted inmate's deliberate indifference claim under the Eighth, not the Fourteenth, Amendment).

In his Response [#30], Plaintiff cites *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), for the proposition that a Fourteenth Amendment substantive due process claim is distinct from an Eighth Amendment claim because the former involves a "shocks the conscience" standard rather than the latter's "deliberate indifference" standard. *See Response* [#30] at 2. However, *Lewis* reiterated the principle the Supreme Court articulated in *Graham v. Connor* and its progeny: "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." 523 U.S. at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

Because Plaintiffs' claims against the CDOC Defendants arise under the Eighth Amendment rather than the Fourteenth Amendment, the Court **recommends** that Plaintiff's Fourteenth Amendment deliberate indifference claims against all three CDOC Defendants be **dismissed.**

C.    Defendant Griffith: Claims One and Two

Plaintiff claims that Defendant Griffith violated his Eighth and Fourteenth Amendment rights by failing to follow prison policies regarding grievances. *Third Am. Compl.* [#11] ¶¶ 38-43, 95; *Response* [#30] at 5. The CDOC Defendants argue that Plaintiff failed to adequately allege Defendant Griffith's personal participation in an alleged violation of Plaintiff's Eighth Amendment rights and that he is entitled to qualified immunity. *Motion* [#29] at 3, 7-12.

To state a constitutional claim, Plaintiff must allege more than the failure to follow a policy—he must adequately allege each defendant's personal participation in the

9

deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). "It is [the plaintiff's] burden to establish that the Constitution, not just a policy, is implicated" because "[p]olicies are often prophylactic, setting standards of care that are higher than what the Constitution requires." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010); *Jolivet v. Cook*, No. 94-4069, 1995 WL 94496, at *2 (10th Cir. 1995) (stating that "violation of a prison regulation does not give rise to a [constitutional] violation absent evidence the prison official's conduct failed to conform to the constitutional standard") (citation omitted). Moreover, "[t]here is no independent constitutional right to administrative grievance procedures," and "the state's voluntary provision of an administrative grievance procedure" does not create a liberty interest in that process. *Boyd*, 443 F. App'x at 332 (internal citations and quotations omitted). Thus, an alleged deprivation of the prison grievance process or an alleged failure to follow that process does not, by itself, state a constitutional claim. *Id.* To survive dismissal, Plaintiff must allege further conduct *by this Defendant* that violated his constitutional rights. *Jolivet*, 1995 WL 94496, at *2.

Here, Plaintiff fails to allege that Defendant Griffith was personally involved in providing (or failing to provide) his medical care. He only alleges that Defendant Griffith failed to follow CDOC policies regarding grievance review, along with a conclusory allegation that Defendant Griffith "refused to [e]nsure that staff are properly trained and understand their duties." *Third Am. Compl.* [#11], ¶¶ 38-40, 92-93. The latter allegation lacks any specifics about Defendant Griffith's role in training or what specific training staff supposedly lack—it is a "naked assertion[] devoid of further factual enhancement" that

10

fails to state a cause of action. *Baker v. Holt*, 498 F. App'x 770, 773 (10th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677).

"Because Plaintiff has failed to state a claim that Defendant Griffith violated his constitutional rights, Defendant Griffith is entitled to qualified immunity, and the allegations against him may be properly dismissed. *Cf. Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) (stating that "if the plaintiff failed to state a claim under Rule 12(b)(6), the [defendant] would also be entitled to qualified immunity"). Accordingly, the Court **recommends** that Plaintiff's claims against Defendant Griffith be **dismissed without prejudice.** *See, e.g.*, *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (stating that "pro se parties generally should be given leave to amend").

D.     **Defendants Brodeur and Winters**

Plaintiff claims that Defendants Brodeur and Winters, both clinical and correctional services management staff, violated his Eighth and Fourteenth Amendment rights through their "disregard for policy and procedure" and by "fail[ing] their duties . . . to [e]nsure [Plaintiff] would receive proper medical care." *Third Am. Compl.* [#11] ¶¶ 99-100, 103. The CDOC Defendants argue that Plaintiff failed to adequately allege that Defendants Brodeur and Winters personally participated in any alleged violations of Plaintiff's Eighth Amendment rights and, therefore, they are entitled to qualified immunity. *Motion* [#29] at 3, 7-12.

Here, Plaintiff's claims fail on multiple levels. First, he fails to plausibly allege that Defendants Brodeur and Winters were personally involved in any failure to provide him medical care. Essentially, he surmises that they must have failed to follow CDOC regulations or policies because he otherwise would have received prompt care. *See, e.g.*,

11

*Third Am. Compl.* [#11], ¶¶ 106 (alleging that Defendants Brodeur and Winters failed to "monitor . . . health services outcomes on a regular basis through: Systematic investigation of complaints and grievances"), 107 (alleging that Plaintiff "still continue[s] to suffer from loss of meals and sleep . . . because [of] [Defendant] Brodeur['s] and [Defendant] Winters['] failure to provide oversight [*sic*] as required by policy and state law"), 99 (alleging that Defendants Brodeur's and Winters' failures in their duties is "demonstrated by the pattern of the deliberate indifferences to [Plaintiff's] medical needs").

Such allegations, that Defendants Brodeur and Winters, as management staff, must have failed to follow policy because a constitutional violation allegedly resulted from subordinate medical staff's (in)actions, are conclusory and speculative and fail to support an actionable claim. *See, e.g.*, *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021) (finding supervisory liability claim based on failure to implement policy was implausibly pleaded because the plaintiff had "fail[ed] to assert sufficient facts to support a causal link between Defendants' actions and the constitutional violation"). The fact that medical staff failed to follow policies does not imply that Defendants Brodeur and Winters failed to enforce those policies, absent additional pleaded facts. *See id.* (noting that the plaintiff had "fail[ed] to plead any facts tending to show that [supervisory defendants] were aware of prior instances of these policies not being followed and that they failed to rectify those situations").

Plaintiff also alleges, in conclusory fashion, that Defendants Brodeur and Winters merely failed to follow or enforce CDOC policies. *See Third Am. Compl.* ¶¶ 99-100, 106-107. Just as this allegation failed to support an actionable claim against Defendant

12

Griffith, it fails to support an actionable claim against Defendants Brodeur and Winters. *See Porro*, 624 F.3d at 1329; *Jolivet*, 1995 WL 94496, at *2. Thus, Defendant Brodeur's and Defendant Winters's alleged failure to follow CDOC regulations does not, in itself, state a constitutional claim. *Id.* To survive dismissal, Plaintiff must allege further conduct *by these Defendants* that violated his constitutional rights. *Jolivet*, 1995 WL 94496, at *2.

Because Plaintiff has failed to state a claim that Defendants Brodeur and Winters violated his constitutional rights, Defendants Brodeur and Winters are entitled to qualified immunity, and the allegations against them may be properly dismissed. Accordingly, the Court **recommends** that Plaintiff's Claim Three, alleged against Defendants Brodeur and Winters, be **dismissed without prejudice.** *See, e.g.*, *Knight*, 749 F.3d at 1190 (stating that "pro se parties generally should be given leave to amend").

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#29] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that all claims against Defendant Griffith be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **RECOMMENDED** that Claim Three be **DISMISSED WITHOUT PREJUDICE**.[7]

IT IS FURTHER **RECOMMENDED** that Defendants Griffith, Brodeur, and Winters be dismissed from this case.

---

[7] If this Recommendation is adopted in full, Plaintiff's remaining claims would be as follows: Claim One against Defendants Jane Does ##1 and 2, Skramsted, and Carson; and Claim Two against Defendants Jane Doe #3, Gribble, and Krick.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

DATED:  July 23, 2024        BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge